IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

LOUIS WAYNE TEETER          §
    TDCJ-CID NO. 1449548      §
v.                          §          C.A. NO. C-12-405
                         §
RICK THALER                 §

## MEMORANDUM AND RECOMMENDATION TO
## GRANT RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

Petitioner is a state prisoner currently incarcerated at the Ellis Unit in Walker County, Texas. He filed this habeas corpus petition pursuant to 28 U.S.C. § 2254, challenging a state court conviction. (D.E. 1). Pending is Respondent's motion for summary judgment. (D.E. 11). Petitioner filed a response in opposition. (D.E. 12). For the reasons stated herein, it is respectfully recommended that Respondent's motion for summary judgment be granted, and that this habeas petition be dismissed.

## I. JURISDICTION

The Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 2241, 2254, which provide that jurisdiction is proper where the inmate is confined, or where the conviction was obtained. Wadsworth v. Johnson, 235 F.3d 959, 961-62 (5th Cir. 2000). Petitioner was convicted in Nueces County, Texas. (D.E. 1, at 1). Therefore, jurisdiction is proper in this Court. 28 U.S.C. § 124(b)(6).

## II. BACKGROUND

On July 27, 2007, Petitioner was convicted in the 214th Judicial District Court of Nueces County, Texas of attempted capital murder, aggravated assault of a peace officer, and violation of a protective order. (D.E. 9-26, at 40). He was sentenced to serve concurrent thirty-, twenty-, and ten-year terms for these crimes, respectively. Id. His convictions were based on the

following facts as revealed at trial:[1]

On the night of February 25, 2007, two county police deputies, Thomas Burnside and Dana Richardson, arrived at Petitioner's ranch in response to a domestic disturbance call.  There they discovered Deborah Wright, Petitioner's live-in girlfriend, and her daughter hurrying toward them in the driveway to the gate that surrounded the property.[2]  Ms. Wright, who had scratches on her neck and face and appeared anxious, told the deputies, "We've got to get out of here, he's going to kill us."  She was referring to Petitioner, who had not yet emerged on the driveway.  She later explained that prior to her having called the police, Petitioner had returned to the house "belligerent [and] mad drunk," and had demanded sex from her.  When she refused, he beat her and forced her to perform oral sex.  Ms. Wright's daughter arrived home soon after and discovered them in the kitchen; Petitioner was partially dressed and had blood on his arms.

After the deputies encountered Ms. Wright and her daughter, Petitioner drove up to the gate in his truck.  Leaving the car running and the driver's side door open, he got out to speak with them.  Based on his demeanor–he was noticeably intoxicated and extremely agitated–as well as the surrounding circumstances, the officers determined that there was evidence of family violence and decided to arrest him.  Petitioner refused to open the gate and let them inside the property.  Sergeant Don Watt, who had just arrived at the scene, motioned for Deputy Burnside to cross over the gate and make the arrest.  As the officer started making his way over to the

---

[1] See Teeter v. State, No. 13-07-00578-CR, 2009 WL 4251166, at *1-6 (Tex. App. July 23, 2009) (unpublished), reversed in part by No. PD-1169-09, 2010 WL 3702360 (Tex. Crim. App. Sep. 22, 2010) (unpublished).

[2] Ms. Wright was holding a Chihuahua puppy in one arm and carrying a crate full of puppies with her other hand.  According to trial testimony, she apparently threw the puppy she was holding over the gate to one of the deputies, and indicated that she would not leave if she could not bring the dogs.  (D.E. 9-32, at 25).

2

other side, Petitioner ran toward his truck.  Deputy Richardson and Sergeant Watt then crossed over the gate to join Deputy Burnside in the pursuit.

As Petitioner jumped into the driver's side of the truck, Deputy Burnside attempted to grab him through the driver's side door, which remained open.  The other officers arrived, and a violent struggle ensued between the four men as the officers attempted to wrestle Petitioner from the truck.  Despite their efforts, Petitioner managed to reverse the truck down the driveway, dragging the officers as they hung on to the vehicle.

Eventually, Deputy Burnside was thrown from the truck as Petitioner accelerated in reverse.  As he fell, he had grabbed and twisted the steering wheel, causing the truck to roll off the driveway just as he landed on the ground.  While lying there, the truck ran over his legs.

After the truck came to a complete stop, Deputy Richardson approached it from the passenger side and Sergeant Watt from the front.  Petitioner, still sitting in the driver's side seat, pointed a revolver at Sergeant Watt.  Both Deputy Richardson and Sergeant Watt pulled out their guns and fired shots at him.  Deputy Burnside, attempting to get up and make his way over to the truck, heard the shots and fired his own gun at Petitioner.  Petitioner then said, "that's enough," and exited the truck.  He was arrested and taken into custody.

At trial, all three law enforcement officials testified regarding the incident, as well as Ms. Wright and her daughter.  In addition, the prosecution introduced evidence that Petitioner's ex-wife had obtained a protective order against him, which prohibited him from engaging in "family violence" against anyone with whom he had a dating relationship.  Petitioner was found guilty of attempted capital murder and aggravated assault of Sergeant Watt; aggravated assault of Deputy Burnside, and violation of a protective order.  Teeter, 2009 WL 4251166, at *5.

3

## III.  PROCEDURAL HISTORY

On July 23, 2009, Petitioner's conviction was affirmed on appeal by the Thirteenth District Court of Appeals.  See generally Teeter, 2009 WL 4251166.  The Texas Court of Criminal Appeals subsequently reversed in part, finding that Petitioner's conviction for aggravated assault of Sergeant Watt violated double jeopardy.  Teeter, 2010 WL 3702360, at *6-7.

On March 2, 2011, Petitioner filed a state habeas petition asserting multiple claims of ineffective assistance of counsel.  (D.E. 1, at 4).  On April 4, 2012, the Court of Criminal Appeals issued a written order denying Petitioner's application on the basis that he had "not demonstrated that he was prejudiced by counsel's conduct at trial" pursuant to Strickland v. Washington, 466 U.S. 668, 694 (1984).  Ex parte Teeter, No. WR-76,667-01, 2012 WL 1142461, at *1 (Tex. Crim. App. Apr. 4, 2012) (per curiam) (unpublished).  In doing so, it declined to adopt the findings of fact and conclusions of law issued by the trial court, but instead denied relief based on the "Court's independent review of the entire record."  Id.

Petitioner filed this habeas petition on December 27, 2012.  (D.E. 1).  Respondent filed a motion for summary judgment on March 15, 2013.  (D.E. 11).  Petitioner submitted a response in opposition on April 13, 2013.  (D.E. 12).

## IV.  DISCUSSION

Petitioner argues that in denying his state habeas petition, the Texas Court of Criminal Appeals unreasonably applied constitutional law regarding his ineffective assistance of counsel claims.  He contends that he has met his burden of showing that his counsel was ineffective based on the following errors and omissions at trial: (1) eliciting and failing to object to

4

inadmissible police opinion testimony; (2) eliciting and failing to object to inadmissible

testimony regarding extraneous offenses; (3) failing to object to inadmissible bad character

testimony; (4) failing to object to hearsay testimony regarding a case study; (5) failing to

impeach Deputy Burnside with his prior inconsistent statements; (6) failing to impeach Ms.

Wright with her prior inconsistent statements; (7) failing to request limiting instructions

regarding Petitioner's extraneous offenses and bad acts; (8) failing to request a jury instruction

regarding the prosecution's burden of proof regarding extraneous offenses and bad acts; and (9)

failing to request a jury instruction on self-defense in regards to the violation of protective order

charge.  (D.E. 1, at 2-4).

Respondent urges that Petitioner's claims should be dismissed on the basis that he has

failed to show that his trial counsel was deficient or that any errors resulted in prejudice.

**A.      Standard Of Review For A Motion For Summary Judgment.**

Federal habeas relief is available to a state prisoner only if he is being held in violation of

the Constitution, laws, or treaties of the United States.  Boyd v. Scott, 45 F.3d 876, 881 (5th Cir.

1994) (per curiam) (citation omitted).  Rule 56 of the Federal Rules of Civil Procedure generally

applies to federal habeas corpus cases.  Clark v. Johnson, 202 F.3d 760, 764-65 (5th Cir. 2000)

(citations omitted)); see also Fed. R. Civ. P. 81(a)(4) ("These rules apply to proceedings for

habeas corpus....").

Summary judgment is appropriate when there is no disputed issue of material fact and the

moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A genuine issue

exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving

party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In making this

determination, the Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. Courts must consider the record as a whole by reviewing all pleadings, depositions, affidavits, interrogatories and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002) (citation omitted). The Court may not weigh the evidence, or evaluate the credibility of witnesses. Id. Furthermore, the Court may only consider affidavits made on personal knowledge, which set forth "such facts as would be admissible in evidence, and [show] affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e); see also Cormier v. Pennzoil Exploration & Prod. Co., 969 F.2d 1559, 1561 (5th Cir. 1992) (per curiam) (refusing to consider affidavits that relied on hearsay); Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987) (per curiam) (stating that courts cannot consider hearsay evidence in affidavits and depositions).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, then the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." Caboni, 278 F.3d at 451. "If reasonable minds

6

could differ as to the import of the evidence ... a verdict should not be directed."  Anderson, 477

U.S. at 250–51.

**B.       Federal Habeas Corpus Standard Of Review Pursuant To The AEDPA.**

Federal habeas relief is available to a state prisoner only if he is being held in violation of

the Constitution, laws, or treaties of the United States.  Boyd v. Scott, 45 F.3d 876, 881 (5th Cir.

1994) (per curiam) (citation omitted).  Rule 56 of the Federal Rules of Civil Procedure generally

applies to federal habeas corpus cases.  Clark v. Johnson, 202 F.3d 760, 764-65 (5th Cir. 2000)

(citations omitted)); see also Fed. R. Civ. P. 81(a)(4) ("These rules apply to proceedings for

habeas corpus....").

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

federal courts are prohibited from granting habeas relief unless a petitioner demonstrates that the

state court's decision was "contrary to, or involved an unreasonable application of, clearly

established Federal law," or was "based on an unreasonable determination in light of the facts."

28 U.S.C. § 2254(d); see also Cullen v. Pinholster, __ U.S. __, 131 S. Ct. 1388, 1398 (2011)

("hold[ing] that review under 2254(d)(1) is limited to the record that was before the state court

that adjudicated the claim on the merits"); Riddle v. Cockrell, 288 F.3d 713, 716 (5th Cir. 2002)

(discussing § 2254(d)).  Thus, "federal habeas relief is only merited where the state court

decision is both incorrect *and* objectively unreasonable."  Morrow v. Dretke, 367 F.3d 309, 313

(5th Cir. 2004) (emphasis in original) (citing Williams v. Taylor, 529 U.S. 362, 411 (2000)).

The AEDPA's provisions "ensure that state-court convictions are given effect to the extent

possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002) (citing Williams, 529 U.S. at 403-

04).

The Supreme Court has concluded that the "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings.  <u>Bell</u>, 535 U.S. at 694 (citing <u>Williams</u>, 529 U.S. at 404-05).  The <u>Bell</u> Court elaborated on the distinctions between "contrary to" and an "unreasonable application:"

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams* that an unreasonable application is different from an incorrect one.

<u>Id.</u> (internal citations omitted).

The Fifth Circuit has explained that the "contrary to" clause applies where a "state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000) (citation omitted). The Fifth Circuit has further determined that "§ 2254(d) permits a federal habeas court 'to review only a state court's "decision" and not the written opinion explaining that decision.'"  <u>St. Aubin v. Quarterman</u>, 470 F.3d 1096, 1100 (5th Cir. 2006) (citing <u>Neal v. Puckett</u>, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam)); <u>accord</u> <u>Anderson v. Johnson</u>, 338 F.3d 382, 390 (5th Cir. 2003) (citing <u>Neal</u>, 286 F.3d at 246).  The state court's "ultimate decision" is to be tested for reasonableness, "not every jot of its reasoning."  <u>Santellan v. Cockrell</u>, 271 F.3d 190, 193 (5th Cir. 2001).  Furthermore, a state court need not cite, or "even be aware of [Supreme Court]

precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Mitchell v. Esparza, 540 U.S. 12, 16 (2003) (per curiam) (quoting Early v. Packer, 537 U.S. 3, 8 (2002)); see also Harrington v. Richter, __ U.S. __, 131 S. Ct. 770, 785 (2011) (reaffirming that "§ 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits'").

Absent a direct conflict with Supreme Court authority, habeas relief is available only if a state court decision is objectively unreasonable. Montoya v. Johnson, 226 F.3d 399, 404 (5th Cir. 2000). Indeed, AEDPA's deferential standard limits the federal court role in the review of state convictions:

> [Section 2254(d)] preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunction in the state criminal justice systems," not a substitute for ordinary error correction through appeal.... As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Harrington, 131 S. Ct. at 786-87 (citation omitted). The Fifth Circuit has further explained that a federal district court "must reverse when [it] conclude[s] that the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'" Gardner v. Johnson, 247 F.3d 551, 560 (5th Cir. 2001). As with the "contrary to" test, the focus of the "unreasonable application" test is "on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of evidence." Neal, 286 F.3d at 246.

9

Finally, "[t]he AEDPA requires that [the Court] presume correct the state court's findings of fact unless the petitioner 'rebut[s] the presumption of correctness by clear and convincing evidence.'" Morrow, 367 F.3d at 315 (quoting 28 U.S.C. § 2254(e)(1)). The presumption of correctness is also accorded to adjudications made during state post-conviction proceedings. Id. The burden to rebut the presumption of correctness remains on the petitioner even if the state "hearing was a 'paper' hearing and may not have been full or fair." Id. (citing Valdez v. Cockrell, 274 F.3d 941, 950-51 (5th Cir. 2001)). In some circumstances, findings of fact may be implied from conclusions of law. See Valdez, 274 F.3d at 948 n.11 ("The presumption of correctness not only applies to explicit findings of fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact.") (citations omitted); Goodwin v. Johnson, 132 F.3d 162, 183-84 (5th Cir. 1997).

**C.      Respondent Is Entitled To Summary Judgment Because Petitioner's Trial Counsel Was Not Ineffective.**

To prevail on a claim of ineffective assistance of counsel, a state prisoner seeking federal habeas corpus relief bears the burden of showing that: (1) counsel's performance was deficient; and (2) the deficient performance resulted in actual prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984). However, a reviewing court need not consider both prongs if the court concludes that petitioner has failed to prove either. Id. at 697; Amos v. Scott, 61 F.3d 333, 348 (5th Cir. 1995) (citation omitted). The Fifth Circuit has determined that "under AEDPA a state court decision rejecting a *Strickland* claim must be accepted unless it was an unreasonable application of its teaching." Granados v. Quarterman, 455 F.3d 529, 534 (5th Cir. 2006).

In order to show counsel's performance was deficient, petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the

10

defendant by the Sixth Amendment." Strickland, 466 U.S. at 687.  He must demonstrate that counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards.  See Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).

Counsel's challenged conduct should be evaluated from the perspective of counsel at the time the conduct occurred.  Strickland, 466 U.S. at 690.  Due to the difficulties inherent in engaging in this analysis without being tainted by "the distorting effects of hindsight," a court's review should be highly deferential to counsel.  Id. at 689.  The reviewing court must give great deference to counsel's performance, strongly presuming that counsel has exercised reasonable professional judgment.  Id. at 690; see also Romero v. Lynaugh, 884 F.2d 871, 876 (5th Cir. 1989) ("strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance") (quoting Strickland, 466 U.S. at 689).

The Fifth Circuit has explained that due to "the almost infinite variety of possible trial techniques and tactics available to counsel, this Circuit is careful not to second guess legitimate strategic choices."  Yohey v. Collins, 985 F.2d 222, 228 (5th Cir. 1993).  In addition, "[a] conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness."  Johnson v. Dretke, 394 F.3d 332, 337 (5th Cir. 2004) (internal quotation marks and citations omitted); accord United States v. Jones, 287 F.3d 325, 331 (5th Cir. 2002) (citation omitted).

Pursuant to the second prong of the Strickland two-part test, Petitioner may not simply allege, but must affirmatively prove, actual prejudice resulting from the ineffective assistance of counsel.  Strickland, 466 U.S. at 693.  Thus, he must affirmatively show that his counsel's

actions deprived him of a fair trial.  See Czere v. Butler, 833 F.2d 59, 63-64 (5th Cir. 1987).

Prejudice results when "there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceedings would have been different."  Strickland, 466 U.S. at 694; see

also Lockhart v. Fretwell, 506 U.S. 364, 372 (1993) (habeas petitioner must show that the trial

result was unreliable, or the proceeding was fundamentally unfair due to counsel's deficient

performance) (citations omitted).

 Petitioner has the burden of proof pursuant to the Strickland test.  See Carter v. Johnson,

131 F.3d 452, 463 (5th Cir. 1997) (holding burden of proof is on petitioner in a federal habeas

proceeding).  In addition, conclusory allegations of ineffective assistance of counsel do not give

rise to a constitutional claim for federal habeas relief.  Collier v. Cockrell, 300 F.3d 577, 587

(5th Cir. 2002) (citations omitted); see also Miller v. Johnson, 200 F.3d 274, 282 (5th Cir. 2000)

("Because [petitioner] failed to set forth the nature of *any* of the errors trial counsel purportedly

failed to preserve and did not set forth any resulting prejudice, the district court properly

determined that these three claims of ineffective assistance were conclusory.") (emphasis in

original).

 Finally, in order to prove that he is entitled to federal habeas relief due to ineffective

assistance of counsel, Petitioner must overcome the presumption of correctness to which the

state court's findings are entitled.  See Schaetzle v. Cockrell, 343 F.3d 440, 444 (5th Cir. 2003)

("It bears repeating that the test for federal habeas purposes is *not* whether [petitioner made a

showing under Strickland, but] ... whether the state court's decision—that [the petitioner] did *not*

make the *Strickland*-showing—was contrary to, or an unreasonable application of, the standards,

provided by clearly established federal law (*Strickland*), for succeeding on his [ineffective

assistance] claim.") (emphasis in original).

      **1.**     **Trial counsel was not ineffective for eliciting or failing to object to police opinion testimony.**

Petitioner contends that his trial counsel was ineffective for eliciting and failing to object to police opinion testimony indicating that: (1) Petitioner was guilty; (2) he intentionally and knowingly ran over Deputy Burnside; and (3) all three officers were telling the truth about the incident.

      **a.**     **Testimony by Deputy Richardson and Sergeant Watt regarding Petitioner's guilt.**

Petitioner contends that trial counsel improperly elicited and failed to object to police opinion testimony indicating that Petitioner was guilty.  Specifically, he elicited testimony from Deputy Richardson to the effect that he did not think it was possible that Ms. Wright had fabricated her complaint.  (D.E. 9-32, at 42).  In addition, counsel failed to object to testimony by Sergeant Watt that it was "very obvious to him that a crime had been committed" and that "[t]here was an act of family violence," (D.E. 9-34, at 21), and elicited testimony from him indicating that the officers knew they "had the person that had just got through beating a woman right in front of" them.  Id. at 21.

First, regarding Deputy Richardson's testimony, the record reveals that the line of questions leading to it was part of counsel's trial strategy.  In particular, counsel began by asking Deputy Richardson whether he had ever reported to a scene in which a person did not tell him the whole truth about the surrounding circumstances, and whether it would be "unusual for someone to make up a story so that they weren't the ones going to jail."  (D.E. 9-32, at 41).  Next in this line of questioning, counsel inquired about the fact that Ms. Wright had recently been

arrested for attempting to punch an investigator.  Id.  Eventually, he asked Deputy Richardson if

"it was not possible that [Ms. Wright had] made up a story that [Petitioner] assaulted her."  Id. at

42.  According to counsel, the purpose of these questions was to suggest "that the officers were

biased and unable to objectively evaluate the situation they were in on the night of the arrest," as

part of a broader trial strategy.  (D.E. 9-58, at 16).  Upon view of the trial record as a whole as

well as trial counsel's explanation, it appears that the line of questioning regarding Ms. Wright

was a matter of trial strategy.  Therefore, counsel was not deficient in this instance.  By

extension, his conduct could not have resulted in prejudice.

Second, the record shows that counsel's conduct in regards to Sergeant Watt's testimony

was not deficient.  On direct examination the prosecutor elicited testimony regarding the

officer's decision to motion to Deputy Burnside to cross over the fence and arrest Petitioner:

> Q:   All right.  When you finally discontinued talking with
> [Petitioner] and [Deputy] Richardson resumed talking with
> him, what were you doing in the meantime?
> A:   I had made a motion to Deputy Burnside to go over the
> fence.
> Q:   Okay.  And what did you base that on?  Why did you
> decide to motion Deputy Burnside over the fence?
> A:   I had initially, and to this day, realized that, you know, a
> crime had been committed.  There was an act of family
> violence.  It was very obvious.  The injuries were quite
> evident.  From what I was told, this thing did not happen
> there.  It happened at or around the house, which was, oh
> probably several hundred feet away.  Now I know it's a
> little over 400 feet away.  This action was pursued up to the
> gate.  There was injury, and I felt that there was enough to
> support an arrest for family violence.

(D.E. 9-34, at 4).  The record reveals that Sergeant Watt was explaining his conduct on the

evening of the incident and testifying to his own perception of the events.  This testimony is

14

permissible and Petitioner's counsel had no basis to object in accordance with Texas law.  See

Fairow v. State, 943 S.W.2d 895, 899 (Tex. Crim. App. 1997) (en banc) (witness can offer

opinion testimony about ultimate issue if he has personal knowledge, explaining that "[a]n

opinion will satisfy the personal knowledge requirement if it is an interpretation of the witness's

objective perception of events (i.e. his own senses or experience)") (citation omitted).  In

addition, Petitioner has not shown that any error resulting from counsel's conduct was

prejudicial.

      Finally, counsel's conduct during cross-examination of Sergeant Watt was not deficient

in that his questions were strategically aimed at revealing weaknesses in the officer's version of

the events.  (D.E. 9-34, at 21).  Specifically, Petitioner's attorney pressed the witness to explain

why Sergeant Watt thought the officers were required to make an arrest the night of the incident:

> A:    We were arresting an assailant in a family violence assault,
>      and getting a warrant was never in question.
> Q:    Not in your mind?
> A:    Not in my mind, no, sir.  We had the violator.  We had the
>      suspect.  We had the person that had just got through
>      beating a woman right in front of us, and I felt there was no
>      need for us to stop what we were doing and come back at a
>      later date with a warrant.

Id.  Counsel elicited this testimony in an effort to suggest that the officers were unjustified and

unreasonable in pursuing Petitioner inside the gate.  The decision to pursue the line of questions

leading up to this testimony was strategic, and therefore counsel was not deficient.  Moreover,

Petitioner has failed to show how any resulting error prejudiced his trial.

      In sum, it is respectfully recommended that Petitioner's trial counsel was not ineffective

in eliciting or failing to object to testimony offered by Deputy Burnside or Sergeant Watt.

### b.   Testimony by Deputy Burnside and Deputy Richardson regarding Petitioner's mental state.

Second, Petitioner urges that counsel should have objected to Deputy Burnside's testimony that Petitioner had intentionally and knowingly ran over his legs, as well as Deputy Richardson's testimony that he had acted intentionally and knowingly.  He claims that this testimony amounted to the "functional equivalent of an opinion that the defendant is guilty." (D.E. 1, at 20).  Specifically, Deputy Burnside's testimony was elicited on re-direct examination when the prosecutor asked him whether he believed Petitioner had "intentionally and knowingly ran him over with his truck:"

> A:   I believe he did.
> Q:   And why is that, sir?
> A:   With his actions he was being combative.  And it's just common sense.  If you're standing in the doorway of a truck open, if you back the truck up you're going to hit somebody.  If you have two people standing there and you spin the tires and you recklessly operate that vehicle forward and reverse, somebody is going to get injured.  If he wasn't trying to kill us with the truck, he was trying to injure us and knock us out of the way.

(D.E. 9-32, at 22).  Immediately following these questions, defense counsel questioned the officer regarding his responses:

> Q:   Now, if he was intentionally and knowingly trying to run you over with his truck, why didn't he, when you fell off, just stop and run you right back over?  He was still going backwards.
> A:   Yes, sir.
> Q:   You lost your balance and fell off.  That's all that happened, right?
> A:   Yes.
> Q:   There was no intent by him to run you over.  You fell off the truck, lost your balance?
> A:   At that point there was no intent.

Id.  Regarding Deputy Richardson's testimony, on direct examination the prosecutor asked him whether he "believe[d] ... from [his] confrontation with [Petitioner] that his actions were intentional and knowing."  Id. at 38.  In response, the officer replied, "Very much so, sir."  Id.

Despite Petitioner's contentions, this testimony is admissible pursuant to Texas law, and therefore his counsel had no basis to object.  The Texas Rules of Evidence provides that, "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."  Tex. R. Evid. 704.  In addition, lay witness opinion testimony is admissible as long as it is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."  Tex. R. Evid. 701.  The record shows that both Deputy Burnside and Deputy Richardson testified to their belief regarding Petitioner's mental state based on their perceptions at the time.  Accordingly, because there was no basis for an objection, Petitioner's counsel was not unreasonable in failing to assert one.  See Ex parte Nailor, 149 S.W.3d 125, 134-35 (Tex. Crim. App. 2004).  Moreover, Petitioner has failed to carry his burden of showing that any error arising from counsel's failure to object resulted in prejudice, especially in light of counsel's extensive and thorough cross-examination of both witnesses.

In sum, it is respectfully recommended that Petitioner's trial counsel was not ineffective in eliciting or failing to object to testimony offered by Deputy Burnside and Deputy Richardson.

### c.   Testimony by Ranger Garza regarding other officers' truthfulness.

Third, Petitioner argues that counsel was ineffective for eliciting and failing to object to testimony from Ranger Garza to the effect that the information he had received from the three officers at the scene was "very, very consistent" with the evidence recovered, and that he did not

believe the three officers had done anything wrong despite that they, themselves, were read

<u>Miranda</u>[3] rights prior to answering questions about the incident.  Petitioner contends that this

testimony constitutes improper expert opinion testimony that the officers were telling the truth.

A careful review of the record shows that the prosecution simply elicited testimony

regarding the witness's observations about the investigation.  Specifically, when asked whether

pictures of the crime scene investigation reflected "common practice" for law enforcement,

Ranger Garza responded that it did.  (D.E. 9-33, at 23)  He went on to explain that, "[w]hat I did

is I listened to the officers' testimony and I looked at the physical evidence present.  And I

noticed that their information they were giving was very, very consistent with the physical

evidence at the scene."  <u>Id.</u>  This testimony is not improper expert testimony regarding another

witness's truthfulness.  <u>See</u> <u>Alberts v. State</u>, 302 S.W.3d 495, 504-05 (Tex. App. 2009).  Rather,

it is testimony based on Ranger Garza's own experience and observations based on his

participation in the investigation.  <u>See</u> Tex. R. Evid. 701.

Similarly, the line of questioning that led to Ranger Garza's testimony that he did not

believe the officers had done anything wrong was unobjectionable.  The record demonstrates that

it was part of defense counsel's effort to suggest that the officers–as opposed to Petitioner–had

been responsible for the disturbance and had caused the violence to escalate.  Specifically, on

cross-examination counsel asked Ranger Garza whether the officers had been suspected of a

crime in connection with the investigation.  (D.E. 9-33, at 27)  When he answered that they had

not, counsel then inquired as to why they had been read their rights prior to being questioned.

<u>Id.</u>  Ranger Garza indicated that he disagreed with the decision to admonish them, but that there

---

[3] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

was nothing wrong with it.  Id.  Counsel then proceeded to ask him a number of questions

regarding possible discrepancies in the investigation, suggesting the possibility of bias in favor

of the officers.  Id.  On redirect examination, the prosecutor returned to the question of why the

officers had been read their rights.  Id. at 31.  Ranger Garza then explained in response that he

did not "believe the officers acted out of the scope of their duties," and that he thought "they did

what they were supposed to do."  Id.  When asked whether the investigation had been properly

conducted–to rebut defense counsel's indication that it had been biased–the witness testified that

there were no discrepancies in the evidence collected and the officer's statements, and that they

were "very consistent."  Id.

Based on this record, the decision by Petitioner's counsel to inquire into the validity of

the investigation and the possibility of bias was part of a larger strategy to implicate the officers

as the true wrongdoers in the incident.  Counsel was not deficient in eliciting this testimony, and

had no basis to object when the prosecutor took the opportunity to further develop it on redirect

examination.  Moreover, within this context, Ranger Garza's testimony did not amount to

impermissible expert testimony regarding another witness's truthfulness.  See Alberts, 302

S.W.3d at 504-06.  Accordingly, counsel's performance was not deficient.  Moreover, Petitioner

has failed to establish prejudice.  See id. at 507 ("an isolated failure to object to improper

evidence does not constitute ineffective assistance of counsel") (citations omitted).

In sum, it is respectfully recommended that Petitioner's trial counsel was not ineffective

in eliciting or failing to object to opinion testimony offered by Ranger Garza.

**2.      Trial counsel was not ineffective for eliciting and failing to object to testimony regarding extraneous offenses.**

Petitioner next argues that his trial counsel was ineffective for eliciting and failing to object to testimony regarding extraneous offenses, including that he had previously: (1) shot Ms. Wright; (2) stepped on her puppy and broke its leg; and (3) assaulted his ex-wife.

**a.      Evidence that Petitioner had previously shot Ms. Wright.**

First, Petitioner contends that counsel failed to object when Deputy Richardson testified that Ms. Wright had told him the night of the incident that Petitioner had previously shot her.  In addition, counsel went on to elicit this same testimony on cross-examination of the officer, and again failed to object when Ms. Wright testified regarding the shooting.

The trial record shows that when Deputy Richardson testified that Ms. Wright told him Petitioner had shot her in the past, defense counsel objected to the testimony.  (D.E. 9-32, at 27). The objection was sustained.  Id.  Accordingly, Petitioner's claim is unfounded to the extent it relies on his counsel's failure to object in this instance.

Petitioner's counsel later raised the statement on cross-examination, within a line of questioning aimed at impeaching Ms. Wright and showing that Deputy Richardson's reliance on her statements was unreasonable.  Specifically, after Deputy Richardson indicated that she had told him about the shooting, he testified that he had not responded to the call relating to that incident, and that he otherwise had no additional knowledge about it.  Id. at 41.  Counsel then asked him whether he was aware that she had told others that instead of Petitioner having shot her, she had accidentally shot herself.  Id.  These questions were clearly part of defense counsel's strategy to undermine Ms. Wright and Deputy Richardson's credibility.  Accordingly, his conduct was not deficient.

20

Next, Ms. Wright testified regarding the shooting, explaining that the reason she told

everyone it had been an accident was because Petitioner would not have taken her to the hospital

otherwise.  Defense counsel then asked a series of questions aimed at impeaching the witness:

> Q:  But you told the police, you told the hospital, you told
> people in the community, and you told his attorney that you
> shot yourself while you were trying to shoot a coyote?
> A:  And my family and my friends as well.
> Q:  You told that to everybody?
> A:  Yes, sir, except one person.
> Q:  And then all of a sudden this happens, and now, oh, he shot
> me in '06, correct?
> A:  Now I told the truth, correct.
> Q:  Now you're going to start telling the truth to the jury?
> A:  Yes, sir.
> Q:  Okay.
> A:  About me being shot, yes, sir.
> Q:  But not your criminal history?

(D.E. 9-33, at 23).  When asked why he pursued these questions, Petitioner's counsel explained

that he was attempting to "discredit her" and "show her as being un-credible and overly biased."

(D.E. 9-58, at 19).  Accordingly, the deficiencies of which Petitioner complains were part of his

trial strategy.

In sum, it is respectfully recommended that Petitioner's counsel was not ineffective for

eliciting and failing to object to testimony that Petitioner had previously shot Ms. Wright.

### b.    Evidence that Petitioner had injured Ms. Wright's puppy.

Second, Petitioner alleges that his trial counsel played a video before the jury in which

Ms. Wright said that on a recent occasion Petitioner had stepped on her puppy and broken its leg:

> Q:  Okay.  Has he ever assaulted you before?
> A:  No.  Just--
> Q:  Other than when he shot you?
> A:  Just the night he shot me.  Not physically, no.
> Q:  So you've never made any other kind of report?

> A:      No.  Now, he stepped on one of my puppies and broke his
>         leg two days ago.  He just let me take him to the vet today.
>         It is broke.  They can't set it until Monday.  I mean, I
>         understand accidents happen, and he said it was.  But as
>         bad as it looks, why didn't he take him to the vet?  I mean,
>         it's not like he doesn't have the money.  You know what I
>         mean?

(D.E. 9-33, at 20).  Based on this record, counsel's decision to introduce the video was part of

his strategy to reveal the witness as being petty, un-credible, and otherwise unreliable.  His

conduct in this regard does not rise to the level of deficiency.

Accordingly, it is respectfully recommended that Petitioner's counsel was not ineffective

for eliciting testimony regarding Petitioner having injured Ms. Wright's puppy.

### c.      Evidence that Petitioner assaulted his ex-wife.

Third, Petitioner complains that his counsel failed to object to testimony by one of the

prosecution's witnesses explaining that there was a protective order against Petitioner because he

had assaulted his ex-wife.  To the extent this testimony was admitted to establish contextual

evidence regarding an element of one of the charges–violation of a protective order–counsel had

no basis to object to it as an extraneous offense.[4]  See Slim v. State, No. 05-96-01261-CR, 1998

WL 224869, at *4-5 (Tex. App. May 7, 1998) (unpublished) (finding that extraneous offenses

that formed the basis of a protective order constituted "same transaction contextual evidence"

and were therefore admissible because they were "necessary to the jury's understanding of the

---

[4] It is possible that counsel could have objected to testimony as unduly prejudicial pursuant to Rule 403 of the Texas Rules of Evidence.  However, such an objection likely would not have been sustained given the relevance of the testimony in regards to the existence of the protective order.  Greene v. State, 287 S.W.3d 277, 284 (Tex. App. 2009) (extraneous evidence not substantially outweighed by danger of unfair prejudice depending on "(1) the probative value of the evidence; (2) the potential of the evidence to impress the jury in some irrational, indelible way; (3) the time the proponent needs to develop the evidence; and (4) the proponent's need for the evidence.") (citing Erazo v. State, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004)).  Accordingly, counsel's failure to object was not prejudicial given the likely ruling.

charged offenses") (citing <u>Rogers v. State</u>, 853 S.W.2d 29, 32-33 (Tex. Crim. App. 1993) (en banc)); <u>Ludwig v. State</u>, 969 S.W.2d 22, 30 (Tex. App. 1998) ("An extraneous offense is relevant outside of supporting an inference of character conformity if it serves to make more or less probable an elemental fact.") (citation omitted).

In addition, although in closing argument the prosecution relied on the testimony to suggest that Petitioner had a history of family violence, this was not necessarily objectionable. The prosecutor was permitted to argue that Petitioner had a history of family violence to the extent it used this evidence to help the jury understand an element of the crime.  <u>See</u> <u>Slim</u>, 1998 WL 224869, at *4-5 (citing <u>Rogers</u>, 853 S.W.2d at 32-33).  By necessity, a protective order will only be entered against an individual if he has a history of family violence.  <u>See</u> Tex. Fam. Code § 85.001(b)(1) ("If the court finds that family violence has occurred and that family violence is likely to occur in the future, the court [] shall render a protective order...."); Tex. Penal Code § 25.07 ("A person commits an offense if, in violation of ... an order issued under ... Chapter 85, Family Code ... the person knowingly and intentionally commits family violence.").  Moreover, to the extent the prosecution attempted to use the protective order to show Petitioner's bad character, a limiting instruction would have been more appropriate than an objection. Accordingly, counsel was not deficient in failing to object.  Moreover, Petitioner has not shown how counsel's deficiency in this regard resulted in prejudice.

In sum, it is respectfully recommended that Petitioner's counsel was not ineffective for eliciting or failing to object to evidence that Petitioner had assaulted his ex-wife.

### 3.    Trial counsel was not ineffective for failing to object to bad character testimony.

Petitioner urges that trial counsel was ineffective for failing to object to Ms. Wright's testimony indicating that: (1) he was controlling and violent when intoxicated; (2) he was capable of shooting a police officer; and (3) he frequently waved guns around.  Counsel explains that he did not object because "taken as a whole, [the witness's testimony] was outlandish and unsubstantiated with any prior reports or evidence."  (D.E. 9-58, at 19).  In addition, "[i]t was [his] trial strategy ... to allow [Ms. Wright] to testify as such, in an effort to discredit her on cross-examination and show her as being un-credible and overly biased."  Id.  Counsel goes on to explain that he "addressed many of the issues complained of on cross-examination, with the intention of showing the jury that the witness[] was untruthful about this testimony, which would then place question upon her entire testimony."  Id.

The record shows that counsel did thoroughly cross-examine Ms. Wright, revealing glaring holes and inconsistencies in her testimony.  (D.E. 9-33, at 4-5).  When viewed as a whole, his failure to object in each instance was not deficient.  See Smith v. Collins, 977 F.2d 951, 960 (5th Cir. 1992) ("The defense of a criminal case is not an undertaking in which everything not prohibited is required.").  Moreover, Petitioner has not shown that any alleged deficiencies resulted in prejudice.  Accordingly, it is respectfully recommended that Petitioner's counsel was not ineffective for failing to object to bad character testimony by Ms. Wright.

### 4.    Trial counsel was not ineffective for failing to object to hearsay testimony regarding a case study.

Petitioner urges that his counsel was ineffective for failing to object to testimony by Ranger Garza referring to a "case study" regarding the behavior of suspects who shoot at police

officers, because such evidence constitutes impermissible hearsay.  Specifically, on direct

examination the prosecutor asked him whether the injuries Petitioner sustained during the

incident were consistent with other evidence collected pursuant to the investigation.  In response,

he explained that they were, "because one of the injuries [he] later found out was to the back of

[Petitioner's] neck."  (D.E. 9-33, at 26).  He went on to testify regarding the wounds:

> And the doctor later, after we got the medical records, indicated
> that he believed–the doctor believed that it was an entry wound
> from the back.  But that, of course, goes along with the case study
> that most suspects who fire at police and they're being shot at, they
> turn around and–it's a natural instinct for them to turn around.
> They put up their hands, even though their hands cannot stop a
> bullet.  There was a bullet wound to his hands.  They also turn
> around to try to shield themselves from being hurt.  That is the
> only explanation for that bullet hole or bullet wound coming to the
> back."

Id.

Rules 801 and 802 of the Texas Rules of Evidence prohibit the use of out of court

statements introduced to prove the truth of the matter asserted.  To the extent the case study was

offered to prove the truth of the matter asserted, counsel was not necessarily deficient in failing

to object to the single, ambiguous reference to it made by Ranger Garza.  See Strickland, 466

U.S. at 688-89 (counsel's conduct is not deficient when it falls within the "wide range of

reasonable professional assistance").  More important, Petitioner has not established that

counsel's failure to object resulted in prejudice.  Accordingly, it is respectfully recommended

that Petitioner's counsel was not ineffective for failing to object to Ranger Garza's testimony

regarding the case study.

25

### 5.     Trial counsel was not ineffective for failing to impeach Deputy Burnside with prior inconsistent statements.

Petitioner next asserts that his trial counsel was ineffective for failing to impeach Deputy Burnside with prior inconsistent statements on cross-examination.  Specifically, Deputy Burnside testified that: (1) Petitioner had never previously told him that Ms. Wright had cut his hand with a knife the night of the incident; (2) he did not observe evidence indicating that Petitioner had been cut; and (3) he was unaware that Petitioner had received stitches for a knife wound.  (D.E. 9-32, at 13).  Petitioner argues that counsel should have impeached the witness with a videotaped statement in which he acknowledged seeing cuts and scrapes on Petitioner's knuckles.

It is unclear why evidence regarding Deputy Burnside's knowledge of cuts on Petitioner's knuckles necessarily would have impeached him as a witness because it would not directly contradict any of his testimony.  For example, while the witness denied any knowledge regarding a cut to Petitioner's hand, he did indicate that he "saw some blood that was smeared on [Petitioner's] right forearm," as well as "on the back of his left hand–maybe his right hand, but I think his left hand–[which] was what he was dabbing with [a] rag."  (D.E. 9-32, at 13).  He further explained that he recalled seeing "nothing on the palm of [Petitioner's] hands."  Id.  This testimony is consistent with Deputy Burnside's videotaped statement regarding cuts on Petitioner's knuckles.  To the extent the prior statement would have discredited him, however, counsel's failure to introduce the video was not deficient given the relative weakness of the impeaching evidence.  See Jones v. Cain, 227 F.3d 228, 230-31 (5th Cir. 2000) (counsel not ineffective for failing to impeach when "alleged discrepancies between the testimony of witnesses and data in the police report approach inanity") (citation omitted).  By extension,

26

counsel's failure did not prejudice Petitioner's trial.  Accordingly, it is respectfully recommended that Petitioner's counsel was not ineffective for failing to impeach Deputy Burnside with his videotaped statement.

### 6.   Trial counsel was not ineffective for failing to impeach Ms. Wright with prior inconsistent statements.

Petitioner next argues that his trial counsel was ineffective for failing to impeach Ms. Wright with her prior inconsistent statement to investigators.  Specifically, at trial she testified that Petitioner had forced her to perform oral sex, whereas she had previously told investigators that he had only *demanded* it.  In addition, although at trial she testified that she saw Petitioner dragging the deputies alongside his truck, she had previously told investigators that she saw them running after the truck but did not see it stop.  At best, these discrepancies are relatively minor, if they constitute discrepancies at all.  For example, Petitioner could have both demanded and forced her to perform oral sex, and she could have seen the deputies both being dragged along the truck and running after it.  Counsel's failure to impeach based on these inconsistencies was not deficient.  See id. (citation omitted).  Furthermore, Petitioner has not shown how any alleged deficiency resulted in prejudice.  Accordingly, it is respectfully recommended that Petitioner's counsel was not ineffective for failing to impeach Ms. Wright.

### 7.   Trial counsel was not ineffective for failing to request limiting instructions regarding Petitioner's extraneous offenses and bad acts.

Next, Petitioner claims that his counsel was ineffective for failing to request limiting instructions regarding his extraneous offenses and bad acts, stemming from Ms. Wright's testimony that he had previously shot her, stepped on her puppy and broken its leg, and that he waved guns around, as well as testimony that he had assaulted his ex-wife.

Pursuant to Texas law, "[u]pon a timely request, a defendant is entitled to an instruction by the trial court limiting the jury's consideration of the extraneous offenses to those purposes for which they are admitted." Walker v. State, 4 S.W.3d 98, 106 (Tex. App. 1999) (citing Abdnor v. State, 871 S.W.2d 726, 738 (Tex. Crim. App. 1994) (en banc)); see also Ex parte Verales, 45 S.W.3d 627, 631-32 (Tex. Crim. App. 2001) (en banc). Although counsel arguably could have requested such a limiting instruction, his failure to do so did not result in prejudice given the overwhelming evidence presented in support of Petitioner's convictions. See Weathers v. State, No. 74144, 2003 WL 22410067, at *4 (Tex. Crim. App. Oct. 22, 2003) (unpublished) (rejecting ineffective assistance of counsel claim on appeal for failure to show prejudice and explaining that legal precedent does not "establish automatic ineffective assistance of counsel for failure to request [limiting] instructions") (discussing Ex parte Verales, 45 S.W.3d at 631). Accordingly, it is respectfully recommended that Petitioner's trial counsel was not ineffective for failing to request limiting instructions regarding extraneous offenses and bad acts.

**8.    Trial counsel was not ineffective for failing to request a jury instruction regarding the prosecution's burden of proof regarding extraneous offenses and bad acts.**

Similarly, Petitioner asserts a separate claim that his counsel was ineffective for failing to request a jury instruction on the prosecution's burden of proof with regard to the extraneous offenses and bad acts.

Pursuant to Texas law, when extraneous offenses are admissible, a defendant may request a charge instructing the jury "that it should not consider evidence of uncharged misconduct unless it believes beyond a reasonable doubt that the defendant committed the act." Id. (citing Verales, 45 S.W.3d at 631). Although counsel arguably should have requested an instruction,

Petitioner once again has failed to satisfy the prejudice prong of the <u>Strickland</u> test given the overwhelming evidence in support of his convictions.  Accordingly, it is respectfully recommended that his counsel was not ineffective for failing to request the "reasonable doubt" jury instruction regarding his extraneous offenses and bad acts.

> **9.     Trial counsel was not ineffective for failing to request a jury instruction on self defense regarding the violation of protective order charge.**

Finally, Petitioner urges that his counsel was ineffective for failing to request a jury instruction on self defense in regards to the violation of protective order charge.  His attorney addressed this claim, explaining that the decision not to do so was part of his trial strategy:

> [P]rior to the beginning of trial, [Petitioner] pled not guilty to all counts.  At no time during the trial, or any time leading up to trial, did [he] ever indicate that he had assaulted [Ms. Wright].  It was our trial strategy that [he] was the person that had been assaulted, due to the presence of blood in the home, the cut to his hand, and the lack of injuries on [Ms. Wright].  Given those facts, and the desires of [Petitioner], we did not request a self-defense instruction in the charge.

(D.E. 9-58, at 16-17).  This explanation reveals that a self-defense instruction would have been inappropriate given counsel's trial strategy.  Therefore, counsel's failure to request such an instruction was not deficient.  By extension, it was not prejudicial for the purposes of <u>Strickland</u>.  Accordingly, it is respectfully recommended that Petitioner's counsel was not ineffective for failing to request a self-defense instruction.

> **10.     Petitioner has not shown cumulative prejudice resulting from alleged defects.**

Petitioner contends that counsel's "myriad acts of deficient conduct at every level of the guilt-innocence stage, in every way imaginable, were clearly calculated to not only denigrate Petitioner's credibility in a way that torpedoed his defense, but to bolster the credibility of the

State's witnesses, the hallmark of prejudice in any case."  (D.E. 1, at 33).  He grossly

exaggerates  the cumulative effect of any purported errors by his trial counsel.  A careful review

of the trial record as a whole reveals that there was overwhelming evidence submitted in support

of his guilt, and that his counsel skillfully handled his defense.  The fact that he was convicted is

a testament to his guilt rather than any lack of effectiveness in his legal representation.

Accordingly, it is respectfully recommended that Petitioner has failed to show that the state

court's application of constitutional law was unreasonable when it determined that he had failed

to establish ineffective assistance of counsel.

## V.  CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the Fifth Circuit from a final order in a habeas corpus

proceeding "[u]nless a circuit justice or judge issues a certificate of appealability."  28 U.S.C.

§ 2253(c)(1)(A).  Although Petitioner has not yet filed a notice of appeal, it is respectfully

recommended that this Court nonetheless address whether he would be entitled to a certificate of

appealability.  A district court ruling on a petitioner's relief may <u>sua</u> <u>sponte</u> rule on a certificate

of appealability because it "is in the best position to determine whether the petitioner has made a

substantial showing of a denial of a constitutional right on the issues before that court.  Further

briefing and argument on the very issues the court has just ruled on would be repetitious."

<u>Alexander v. Johnson</u>, 211 F.3d 895, 898 (5th Cir. 2000) (per curiam).

The statute establishes that "[a] certificate of appealability may issue ... only if the

applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C.

§ 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in

the habeas petition and a general assessment of their merits."  <u>Miller-El v. Cockrell</u>, 537 U.S.

322, 336 (2003).  To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000). This standard requires a § 2254 petitioner to demonstrate that "reasonable jurists could debate whether ... the [petition] should have been resolved in a different manner or that the issues presented ... deserve[d] encouragement to proceed further."  <u>United States v. Jones</u>, 287 F.3d 325, 329 (5th Cir. 2002) (citation omitted).

As to claims district courts reject solely on procedural grounds, a petitioner must show both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right <u>and</u> that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  <u>Slack</u>, 529 U.S. at 484 (emphasis added).

It is respectfully recommended that reasonable jurists could not debate this denial on substantive or procedural grounds nor find that the issues presented are adequate to proceed. <u>Miller-El</u>, 537 U.S. at 327 (citing <u>Slack</u>, 529 U.S. at 484).  Accordingly, it is respectfully recommended that the Court find that Petitioner is not entitled to a certificate of appealability.

## VI.  RECOMMENDATION

Based on the foregoing reasons, it is respectfully recommended that Respondent's motion for summary judgment, (D.E. 11), be granted, and that this habeas petition, (D.E. 1), be dismissed.  Additionally, it is respectfully recommended that Petitioner be denied a certificate of appealability.

Respectfully submitted this 1st day of May 2013.


BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1); Rule 72(b) of the Federal Rules of Civil Procedure; Rule 8(b) of the Rules Governing § 2254 Cases; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).